IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

WAYNE E. S.,[1]

      **Plaintiff,**

                                  **Civil Action 2:22-cv-1405**

      **v.**                           **Chief Judge Algenon L. Marbley**

                                  **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL
SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Wayne E. S. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security ("Commissioner") denying his

application for Supplemental Security Income ("SSI"). This matter is before the undersigned for

a Report and Recommendation ("R&R") on Plaintiff's Statement of Errors (ECF No. 13); the

Commissioner's Memorandum in Opposition (ECF No. 14); Plaintiff's Reply (ECF No. 15); and

the administrative record (ECF No. 8). For the reasons that follow, the Commissioner's non-

disability determination is **AFFIRMED,** and Plaintiff's Statement of Errors is **OVERRULED**.

## I.      BACKGROUND

Plaintiff filed his SSI application on April 30, 2012, alleging that he had been disabled

since December 31, 2004. (R. 1249, 244–49.) After that application was denied administratively

(R. 89, 91–101, 113–24, 125), a hearing was held on May 14, 2015 (R. 30–81), before

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other
disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

Administrative Law Judge Henry Wansker ("ALJ Wansker") who issued an unfavorable determination on June 8, 2015 (R. 8–29). When that determination became final (R. 1–5), Plaintiff sought judicial review in this Court (R. 1273–74), but the parties jointly sought and received an Order remanding the matter for further proceedings (R. 1275–76).

On September 19, 2017, the Appeals Council vacated ALJ Wansker's June 8, 2015 determination and remanded the matter with several directives, including that upon remand, further consideration was to be given to the nature, severity, and limiting effects of Plaintiff's hip impairment. (R. 1278–83.) On May 23, 2018, a hearing was held by Administrative Law Judge Thomas Wang ("ALJ Wang") (R. 1207–45) who issued an unfavorable determination on July 17, 2018 (R. 1284–1302). Plaintiff asked the Appeals Council to review that determination. (R. 1429–32.) The Appeals Council indicated that ALJ Wang's determination failed to adequately comply with its prior directives regarding Plaintiff's hip impairment, noted that some of ALJ Wang's hip impairment findings lacked support, and that ALJ Wang had failed to discuss certain examination findings. (R. 1305.) As a result, the Appeals Council remanded the matter again and directed ALJ Wang to further evaluate Plaintiff's symptoms (R. 1307) and to "consider obtaining a medical consultative examination" because the record contained minimal treatment records about Plaintiff's hip impairment, and the records that were available were from 2015, and thus possibly dated. (R. 1305.)

ALJ Wang subsequently held a telephone conference on July 23, 2020 (R. 1190–1206), before issuing another unfavorable determination on November 19, 2020 (R. 1166–89). That third determination became final when the Appeals Council denied Plaintiff's request for review. (R. 1155–62.)

Plaintiff seeks judicial review of that final determination. He submits that remand is warranted because ALJ Wang did not obtain a consultative medical examination to evaluate Plaintiff's hip impairment. (Pl.'s Statement of Errors 14–18, ECF No. 13.) Plaintiff additionally argues that ALJ Wang erred when he considered and weighed medical opinions from Plaintiff's treating physician, Dr. Haggenjos. (*Id.*) The Commissioner correctly contends that Plaintiff's assertions lack merit. (Def.'s Mem. in Opp'n, 5–14, ECF No. 14.)

## II.     ALJ WANG'S DECISION

ALJ Wang issued his decision on November 19, 2020, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 1166–1189.) At step one of the sequential evaluation process,[2] ALJ Wang found that Plaintiff had not engaged in substantial

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

gainful activity since April 30, 2012, Plaintiff's application date. (R. at 1172.) At step two, ALJ

Wang found that Plaintiff had the following severe impairments: degenerative joint disease of

the left hip and bilateral hip dysplasia; degenerative disc disease of the lumbar spine; scoliosis;

obesity; asthma; fibromyalgia; major depressive disorder; and anxiety disorder. (*Id.*) At step

three, ALJ Wang found that Plaintiff did not have an impairment or combination of impairments

that met or medically equaled the severity of one of the listed impairments described in 20

C.F.R. Part 404, Subpart P, Appendix 1. (R. at 1173.)

> ALJ Wang then set forth Plaintiff's residual functional capacity ("RFC")[3] as follows:
>
> After careful consideration of the entire record, the [ALJ] finds that the [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except foot control operation is limited to occasional; sit/stand option, must be allowed to change positions after 30 minutes to sit or stretch for 1-2 minutes; occasional for push/pull and is limited as per exertional weight limits; never climb ladders, ropes, scaffolds; occasional for climb ramps or stairs, balancing, stooping, kneeling, crouching, crawling; occasional concentrated exposure to extreme heat and extreme cold; and occasional concentrated exposure to irritants such as fumes, odors, dust and gases and poor ventilation. Mentally, [Plaintiff] is limited to occasional interaction with the public, coworkers, and supervisors.

(R. at 1175–76.)

At step four ALJ Wang relied on testimony from a vocational expert ("VE") to determine

that Plaintiff had no past relevant work. (R. at 1181.) At step five, ALJ Wang relied again on VE

testimony to determine that in light of Plaintiff's age, education, work experience, and RFC, jobs

existed in significant numbers in the national economy that he could perform, including inspector

and machine tender. (R. at 1182.) ALJ Wang therefore concluded that Plaintiff had not been

under a disability, as defined in the Social Security Act, since April 30, 2012. (*Id.*)

---

[3] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

### III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that  finding 'even if there is substantial evidence in the record that would have supported an opposite  conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109  F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

# IV.    ANALYSIS[4]

As previously explained, Plaintiff posits that remand is warranted because ALJ Wang failed to obtain a consultative medical examination and erred when considering and weighing medical opinion evidence. (Pl.'s Statement of Errors 14–20, ECF No. 13.) Each contention of error is addressed; both are found lacking in merit.

## A.    ALJ Wang's Failure to Obtain a Consultative Medical Examination for Plaintiff's Hip Impairment

ALJ Wang did not obtain a consultative examination for Plaintiff's hip impairment. Plaintiff argues that this constitutes reversible error for two reasons.

First, Plaintiff argues that ALJ Wang's failure to obtain a consultative examination failed to comply with the Appeals Council's directive. (Pl.'s Statement of Errors 14–18, ECF No. 13.) The Commissioner contends, however, that the Appeals Council did not direct ALJ Wang to obtain a consultative medical examination. (Def.'s Mem. in Opp'n, 4–5, ECF No. 14.) Instead, the Appeals Council indicated that ALJ Wang retained discretion to obtain one—it indicated that ALJ Wang should consider obtaining a consultative examination and directed him to obtain one "as needed." (R. 1306, 1307.) The Commissioner further contends that even if the Appeals Council had directed ALJ Wang to obtain a consultative examination, this Court would lack jurisdiction to determine if ALJ Wang complied with that directive. (Def.'s Mem. in Opp'n, 5–8, ECF No. 14.) The undersigned agrees.

This Court recently noted that a few district courts have held that an ALJ's failure to follow an Appeals Council directive can constitute a procedural due process error that warrants

---

[4] Plaintiff's contentions of error relate only to his physical impairments, and thus, the undersigned's discussion is limited to the same.

remand. *Amber R. v. Comm'r of Soc. Sec.*, No. 3:21-cv-204, 2022 WL 3966676, at *2 (S.D. Ohio

Aug. 31, 2022) (citing *e.g.*, *Godbey v. Colvin*, No. 1:13cv-00167, 2014 WL 4437647, at *6–7

(W.D. Ky. Sept. 9, 2014); *Salvati v. Astrue*, No. 3:08-cv-494, 2010 WL 546490, at *4–5 (E.D.

Tenn. Feb. 10, 2010)). But this Court also noted that a majority of courts in the Sixth Circuit

have held that a federal court lacks jurisdiction to consider if an ALJ has complied with an

Appeals Council instruction. *Id.* (citing *Shope v. Comm'r of Soc. Sec.*, No. 2:14-cv-2055, 2015

WL 3823165, at *8 (S.D. Ohio June 19, 2015), *report and recommendation adopted*, 2015 WL

6155919 (S.D. Ohio Oct. 20, 2015); *Hedges v. Comm'r of Soc. Sec.*, No. 2:16-cv-592, 2017 WL

3140876, at *11 (S.D. Ohio July 25, 2017), *report and recommendation adopted*, 2017 WL

3720539 (S.D. Ohio Aug. 29, 2017), *aff'd on other grounds*, No. 17-4143, 725 F. App'x 394 (6th

Cir. 2018)). *See also Hubbard v. Comm'r of Soc. Sec.*, No. 18-11758, 2019 WL 4866733, at *2–

3 (E.D. Mich. June 10, 2019) (collecting cases), *report and recommendation adopted*, 2019 WL

4593624 (E.D. Mich. Sept. 23, 2019). This Court explained that district courts are granted

jurisdiction to review only "final decision[s] of the Commissioner of Social Security." *Id.*

(quoting 42 U.S.C. § 405(g)). And an ALJ's compliance (or failure to comply) with a directive

from the Appeals Council constitutes an "internal agency matter which arises prior to the

issuance of the agency's final decision." *Id.* (quoting *Brown v. Comm'r of Soc. Sec.*, No. 1:08-cv-

183, 2009 WL 465708, at *6 (W.D. Mich. Feb. 24, 2009)). Accordingly, this Court determined

that its "scope of review is limited to an analysis of the ALJ's decision and not a review of [an]

ALJ's compliance with [an] Appeals Council's Order of Remand." *Id.* (*quoting Prichard v.

Astrue*, No. 2:08-0055, 2011 WL 794997, at *15 (M.D. Tenn. Feb. 28, 2011) (internal quotation

omitted), *report and recommendation adopted*, 2011 WL 113755 (W.D. Mich. March 25,

2011)). For these reasons, the undersigned finds that this Court does not have jurisdiction to

review whether ALJ Wang complied with the Appeals Council's directives regarding a consultative medical examination.

This Court also recently explained that it can be inferred that the Appeals Council has found that an ALJ substantially complied with its prior instructions when the Appeals Council has an opportunity to review an ALJ's compliance but declines to remand a case. *Id*. (citing *Brown*, 2009 WL 465708 at *6; *Shope*, 2015 WL 3823165, at *9; *Hedges*, 2017 WL 3140876, at *11; *Llaneza v. Comm'r of Soc. Sec.*, No. 2:15-cv-2437, 2016 WL 4054918, at *13 (S.D. Ohio July 29, 2016), *report and recommendation adopted*, 2016 WL 4398673 (S.D. Ohio Aug. 18, 2016)). Such is the case here—the Appeals Council declined to review ALJ Wang's November 19, 2020 determination. (R. 1155–62.) "[W]here the Appeals Council declines to remand a second time, it is not this Court's role to second guess their satisfaction with the ALJ's adherence to their own prior order." *Gritzinger v. Comm'r of Soc. Sec.*, No. 20-CV-11878, 2021 WL 3672230, at *11 (E.D. Mich. July 29, 2021), *report and recommendation adopted*, 2021 WL 3667489 (E.D. Mich. Aug. 18, 2021).

Plaintiff raises a second argument as to why ALJ Wang's failure to obtain a consultative examination constituted reversible error. Specifically, Plaintiff notes that ALJ Wang stated at the July 23, 2020 hearing that he intended to obtain a consultative examination, but then wrote in the November 19, 2020 determination that Plaintiff's representative indicated that consultative examinations were not needed via post-hearing telephonic communications. (Pl.'s Statement of Errors 16–17, ECF No. 13 (citing R.1177).) Plaintiff's counsel avers, however, that although her staff contacted the hearing office to find out if a consultative examination could be scheduled, no one at her offices ever communicated that a consultative examination was unnecessary. (Affidavit 1–2, ECF No. 15–1.)

This argument is unavailing. The regulations provide only that an ALJ *may* decide to purchase a consultative examination if he cannot get the information needed from a claimant's medical source. 20 C.F.R. § 416.919a(a). That language plainly places the decision to order a consultative examination within an ALJ's discretion. *Cyrus v. Astrue,* 1:11–CV–234, 2012 WL 2601495, at *8 (S.D. Ohio July 5, 2012) ("Whether or not to order a consultative examination is a discretionary decision made by an ALJ upon a finding that the record is not sufficiently developed to evaluate a claim."), *report and recommendation adopted*, 1:11CV234, 2012 WL 3113224 (S.D. Ohio July 31, 2012); *Lucas v. Comm'r of Soc. Sec.,* 1:11 CV 2497, 2013 WL 1150019, at *1 (N.D. Ohio Mar. 19, 2013) ("Ordering a consultive exam lies in the discretion of the ALJ."); *Lockett v. Comm'r of Soc. Sec.,* 11–13709, 2012 WL 3759037, at *4 (E.D. Mich. Aug. 1, 2012) ("The determination to order a consultative examination or diagnostic testing is entirely discretionary and is done only when . . . "), *report and recommendation adopted*, 11–13709, 2012 WL 3731772 (E.D. Mich. Aug. 29, 2012). For that reason, Courts have repeatedly rejected claims that ALJs were required to order consultative examinations. *See e.g.*, *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015) ("[N]one of these cases even remotely suggests that an ALJ must, as a matter of law, seek out a physician's medical opinion where one is not offered.") *Robertson v. Comm'r of Soc. Sec.*, 513 F. App'x 439, 441 (6th Cir. 2013) ("Given the considerable amount of medical evidence in the record concerning Robertson's cardiovascular problems and his resulting functional capability, including test results, physicians' notes, and opinion evidence from multiple physicians, and the lack of any significant inconsistencies in the evidence, the ALJ was not obligated to order a consultative examination with a cardiologist.").

Here, ALJ Wang noted that the record contained minimal records related to Plaintiff's left hip impairment and that the most recent evidence directly related to that impairment was from 2015. (R. 1177.) ALJ Wang nevertheless explained that even though more recent evidence was not directly related to Plaintiff's hip impairment, it appeared inconsistent with Plaintiff's allegations. (*Id*.) For instance, in April 2017, Plaintiff indicated that his pain was an eight on a ten-point scale, but Plaintiff did not appear to be in acute distress. (*Id*.) ALJ Wang additionally noted that Plaintiff had not always followed treatment advice, and that some, but not all of Plaintiff's non-compliance might be due to Plaintiff's lack of insurance. (R. 1177–78.)

Moreover, when discussing Plaintiff's hip impairment, ALJ Wang noted that Plaintiff's activities after the alleged date of onset were inconsistent with his allegations of debilitating symptoms. ALJ Wang wrote:

> The claimant testified at the previous hearing that all he does his watch television. However, in September 2011 it was noted that the claimant was staying active and volunteering for a drug enforcement task group (Ex. 3F/2). Other evidence reveals that in May 2015 the claimant stated that he had a girlfriend, paid bills, watched television, and rode in a car (Ex. 5E). From 2011 into 2014 he had volunteered for the neighborhood watch (Ex. 7A and 3F). He went to the emergency room after injuring himself on the mower and then again by falling off a ladder, indicating that he was doing more than just sitting in a chair or lying down all day. In March 2011, he was treated for a laceration sustained removing aluminum siding. A year later he went to the hospital when hit by a tree limb as he was driving a bulldozer. In February 2012, he was leveling a mobile home when the jack slipped. And in March 2014 he was treated after dropping a motor on his right foot. He was also able to go to a graduation party and remain for, he said, 20 minutes. It appears that the claimant is more active than he has testified to, and the amount of activities in which the claimant appears able to engage is not indicative of someone with debilitating symptoms.

(R. 1178.)

Therefore, it appears that although ALJ Wang acknowledged that the available evidence was older or only indirectly related to Plaintiff's hip impairment, the evidence that was available was sufficient to make a determination—ALJ Wang discussed Plaintiff's testimony, conservative

treatment, reasons that possibly explained some of that conservative approach, and activities of daily living. Considering this, the undersigned does not find that the record was so insufficient that ALJ Wang's failure to obtain a consultative examination constituted an abuse of discretion. The undersigned further notes that even if ALJ Wang may have mistakenly believed that Plaintiff's counsel no longer thought a consultative examination was necessary, ALJ Wang retained discretion to order one regardless of Plaintiff's counsel's position on the issue. For these reasons, Plaintiff's first contention of error lacks merit.

**B.     The ALJ's Consideration of Dr. Haggenjos' Medical Opinions About his Physical Impairments**

Plaintiff also argues that ALJ Wang erred when evaluating medical opinions from his treating physician, Dr. Haggenjos. (Pl.'s Statement of Errors 18–19, ECF No. 13.) This contention of error likewise lacks merit.

An ALJ must consider all medical opinions that he receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations[5] define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(1).

An ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . . " 20 C.F.R. §

---

[5] Because Plaintiff's application was filed prior to March 27, 2017, his claims are governed by regulations governing benefits claims made prior to that date.

416.927(c)(2); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 416.927(c)(2).

If an ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.* Further, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies

the treating physician rule and permits meaningful review of the ALJ's application
of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when

the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of

Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no

requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the

written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)

(indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly

address all of the six regulatory factors for weighing medical opinion evidence in a written

decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a

claimant's RFC. 20 C.F.R. § 416.927(d). Although the ALJ will consider opinions

of treating physicians "on the nature and severity of your impairment(s)," opinions on issues

reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. §

416.927(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Here, Dr. Haggenjos completed a check-box form on May 2, 2015. (R. 1150–51.)[6]

Attached to that check-box form is a one-page letter dated May 13, 2015, in which Dr.

Haggenjos memorialized findings from a January 28, 2015 examination. (R. 1152–54.) ALJ

Wang summarized those documents as follows:

> Per the directive of the Appeals Council, the [ALJ] has reevaluated the opinion of
> treating physician, Jeffrey Haggenjos, D.O., pursuant to 20 CFR 416.927 (Ex. 18F).
> Dr. Haggenjos opined that [Plaintiff] was limited to lifting/carrying 20 pounds
> occasionally and 1-2 pounds frequently, could walk and stand for less than 2 hours

---

[6] Dr. Haggenjos also indicated in two other forms that Plaintiff was unable to work. (R. 548–49,
495–96.) Because those statements were about an issue reserved to the Commissioner, ALJ
Wang determined that they were not entitled to any weight. (R. 1181.) Plaintiff does not
challenge that determination or raise any issues related to these forms.

each, sit for 6 hours, could rarely twist or climb stairs, and should never stoop/bend, crouch, or climb ladders. He opined that [Plaintiff] should avoid even moderate exposure to wetness, humidity, vibration, fumes, and hazards. Finally, he opined that [Plaintiff] has profound depression, which interferes with his daily living. His mental impairments would substantially affect his ability to understand, remember, and carry out simple instructions; make simple work-related decisions; respond appropriately to supervisors and coworkers; and deal with changes in a routine work setting. He opined that [Plaintiff] is unable to handle a work schedule. He felt [Plaintiff] could do his functional activities outlined in the opinion 0-3 days per week for less than three consecutive weeks per month.

(R. 1180.) ALJ Wang then indicated that he gave the opinions in the May 2015 documents

partial weight and explained his reasons for doing so. He wrote:

> The [ALJ] gives partial weight to the opinion of Dr. Haggenjos. The [ALJ] finds that the lifting/carrying, standing, walking, and sitting portion opinions are somewhat supported given the breathing issues, pain symptoms, tenderness, and objective evidence of hip dysplasia found elsewhere in the record. The [ALJ] has considered [Plaintiff]'s testimony regarding his difficulty sitting and standing due largely to his hip pain, and has thus further limited [Plaintiff] to the sedentary exertional level with the need for a sit/stand option set out above. The [ALJ] agrees with and has adopted the limitation to no climbing ladders, given the severe hip issues and obesity related limitations in the record. The [ALJ] finds that the overall evidence supports the environmental limitations set out by Dr. Haggenjos, given the alleged persistent breathing issues, use of oxygen, and imaging findings in the record, and has thus included limitations to occasional concentrated environmental exposure as detailed in the RFC above. However, the [ALJ] does not find that the ability to do the functional activities 0-3 days of the week is supported by the broader record, particularly given [Plaintiff]s reported daily activities such as volunteering for a task group and neighborhood watch, doing significant work around the house, and driving a bulldozer. The [ALJ] also considered the opinion of Dr. Haggenjos with respect to [Plaintiff]'s mental functioning, and gives this little weight as it is vague, and the broader record shows little indication of ongoing severe mental symptoms aside from issues with mood and anger that support limitations in [Plaintiff]'s ability to interact with others.

(R. 1180–81.) As this discussion demonstrates, ALJ Wang accommodated several of Dr.

Haggenjos' opinions by limiting Plaintiff to sedentary work. ALJ Wang also incorporated into

Plaintiff's RFC the ladder climbing and environmental hazard limitations that Dr. Haggenjos

opined.

14

However, ALJ Wang found unpersuasive Dr. Haggenjos' opinion that Plaintiff would be limited to performing functional activities 0–3 days a week. ALJ Wang explained that he discounted this opinion because the record reflected that Plaintiff engaged in activities after the alleged date of onset that appeared to be inconsistent with debilitating symptoms. Substantial evidence supports that determination. As ALJ Wang noted elsewhere in the opinion, Plaintiff's treatment records reflected that he was injured when engaging in activities. For example, on May 12, 2009, Plaintiff sought treatment after he fell off the edge of a bridge while he was moving a trailer and lifting cinder blocks. (R. 341.) On March 19, 2011, Plaintiff again sought treatment after he lacerated his hand removing dirty aluminum siding. (R. 450.) Although he worked from inside his vehicle because he could not walk, Plaintiff reported that he was active in a volunteer security organization called REACT on March 31, 2011. (R. 482.) On July 29, 2011, Plaintiff reported that he continued his volunteer work. (R. 478.) On September 23, 2011, Plaintiff indicated that although his hip pain was aggravated by activity, he stayed active and volunteered in a drug enforcement task group. (R. 477.) On February 20, 2012, Plaintiff sought treatment for injuries sustained to his right arm and wrist when he was leveling a mobile home and the jack slipped, causing the frame to hit him. (R. 883.) On March 26, 2012, Plaintiff sought treatment for broken ribs and a liver laceration after he was injured by a tree limb that hit him in the chest while he was driving a bull dozer. (R. 500, 502–03, 509–10, 516.)

In any event, Plaintiff does not challenge ALJ Wang's evaluation of these opinions from Dr. Haggenjos. Instead, Plaintiff maintains that ALJ Wang erred by failing to give good reasons for declining to incorporate into his RFC the reaching, handling, fingering, feeling, and pushing/pulling limitations opined by Dr. Haggenjos in the check-box form from May 2015. (Pl.'s Statement of Errors 19, ECF No. 13.)

The undersigned agrees that ALJ Wang did not incorporate those opined limitations into Plaintiff's RFC or discuss why they were omitted. But the undersigned nevertheless concludes that any error was harmless. Even where an ALJ violates the treating physician rule, the *Wilson* Court described three possible scenarios that could lead a Court to a finding of harmless error. *Wilson*, 378 F.3d at 547. First, the Court indicated that harmless error might occur "if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it . . . ." *Id.* Second, the Court noted that if the ALJ's decision was "consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant." *Id.* Third, the Court considered the possibility of a scenario "where the Commissioner has met the goal of § 1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Id.*

The first category—patent deficiency—is implicated here. The May 2, 2015 check-box form asked Dr. Haggenjos how often Plaintiff could reach, handle, finger, feel, and push/pull. (R. 1151.) Dr. Haggenjos wrote that Plaintiff could only rarely reach, handle, finger, and feel, and that he could almost never push/pull. (*Id.*) In response to a question asking how those physical functions were affected, Dr. Haggenjos wrote "greatly." (*Id.*) When asked what medical findings supported this opinion, Dr. Haggenjos wrote "X-ray." (*Id.*) Dr. Haggenjos did not, however, indicate when that X-ray was taken or what it purportedly showed.[7] The May 13, 2015 letter to which the check-box form was attached is silent about these opined limitations. (R. 1152–54.)

---

[7] The record contains a September 2009 X-ray of Plaintiff's right humerus and elbow which showed no fractures, dislocations, or gross bony abnormalities (R. 368) and an X-ray of Plaintiff's right hand which showed "no evidence of fracture or dislocation" and that bony architecture was within normal limits. (R. 886.)

16

The Sixth Circuit has held that a check-box physician opinion that lacks explanation is weak evidence and that such opinions meet the patently deficient standard. *See*, *e.g.*, *Pruitt v. Comm'r of Soc. Sec.*, No. 22-5152, 2022 WL 4517094, at * 4 (6th Cir. Sept. 28, 2022) (citing *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474–75 (6th Cir. 2016) (finding that even if the ALJ failed to give good reasons for not abiding by the good reasons rule, it was harmless error because the at-issue opinion was in a check-box form unaccompanied by explanation)). *See also Dollinger v. Comm'r of Soc. Sec.*, No. 1:20-cv-00044, 2022 WL 484012, at * 8 (N.D. Ohio Feb. 17, 2022) (finding that failure to provide good reasons for discounting a treating source opinion was harmless error because the check-box medical source statement was patently deficient); *Toll v. Comm'r of Soc. Sec.*, No. 1:16cv705, 2017 WL 1017821, at *4 (W.D. Mich. Mar. 16, 2017) (finding that "even if the ALJ failed to provide good reasons" for assigning little weight to a treating source's opinion, such error was harmless where the opinion consisted of a check-box worksheet lacking any explanation beyond a diagnosis). Given this authority, the undersigned concludes that the reaching, handling, fingering, feeling, and pushing/pulling opinions, which are reflected on a check-box form sans explanation, are patently deficient. Thus, any error by ALJ Wang in failing to discuss why they were not credited is harmless.

## V.     RECOMMENDED DISPOSITION

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's non-disability determination.

## VI.     PROCEDURE ON OBJECTIONS

If any party objects to this R&R, that party may, within fourteen (14) days of the date of this R&R, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the

objection(s).  A District Judge of this Court shall make a *de novo* determination of those portions of the R&R or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the R&R.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE