# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| WAYNE E. S., | : |
| | : |
| **Plaintiff,** | : |
| | : Case No. 2:22-cv-01405 |
| v. | : |
| | : Chief Judge Algenon L. Marbley |
| DR. KILOLO KIJAKAZI, | : |
| ACTING COMMISSIONER OF | : Magistrate Judge Chelsey M. Vascura |
| SOCIAL SECURITY, | : |
| | : |
| **Defendant.** | : |

## OPINION & ORDER

This matter is before the Court on Plaintiff Wayne E. S.'s Objection (ECF No. 17) to the Magistrate Judge's October 21, 2022, Report and Recommendation (ECF 16), recommending that this Court overrule Plaintiff's Statement of Errors (ECF No. 13) and affirm the Commissioner's decision. Plaintiff entered a timely Objection on November 4, 2022. (ECF No. 17). Upon independent review and for the reasons set forth below, the Court **ADOPTS WITH MODIFICATIONS** the Magistrate Judge's Report and Recommendation and **AFFIRMS** the Commissioner's non-disability determination. Plaintiff's Objection is **OVERRULED**.

## I.     BACKGROUND

Plaintiff Wayne E. S.[1] is a Supplemental Security Income ("SSI") claimant. He has been found to have multiple severe impairments, affecting both his physical and mental health. (R. & R. at 4, ECF No. 16). These ailments include "degenerative joint disease of the left hip and bilateral hip dysplasia; degenerative disc disease of the lumbar spine; scoliosis; obesity; asthma;

---

[1] Pursuant to this Court's General Order 22-01, plaintiffs in Social Security cases are referred to only by their first names and last initials.

1

fibromyalgia; major depressive disorder; and anxiety disorder." (*Id.* at 4). Despite these medical issues, Plaintiff's SSI claim was denied on the basis that there are significant numbers of jobs that he is able to perform, in light of his age, education, work experience, and residual functional capacity ("RFC"), in the national economy. (*Id.*) (citing R. 1182).

Plaintiff filed his SSI application with the U.S. Social Security Administration ("SSA") on April 30, 2012, in which he alleged that he has been disabled since December 31, 2004. (*Id.* at 1). That application was denied. (*Id.*). A hearing was then held on May 14, 2015, before Administrative Law Judge ("ALJ") Henry Wansker, who issued an unfavorable determination on June 8, 2015. (*Id.* at 2). Plaintiff initially sought judicial review of that decision in this Court once it became final; the Court remanded the matter to SSA on the parties' joint request. (*Id.*). On September 19, 2017, the SSA Appeals Council vacated ALJ Wansker's unfavorable determination and remanded the matter with several directives, among them that "further consideration was to be given to the nature, severity, and limiting effects of Plaintiff's hip impairment." (*Id.*) (citing R. 1278–83).

On remand, Plaintiff's case was heard by ALJ Thomas Wang on May 23, 2018; ALJ Wang issued an unfavorable determination on July 17, 2018. (*Id.*). In response to Plaintiff's request for review, the Appeals Council remanded the matter a second time, suggesting that ALJ Wang's determination failed to comply adequately with the Council's September 19, 2017, directives regarding Plaintiff's hip impairment. (*Id.*). Specifically, the second Appeals Council decision, dated September 27, 2019, noted that ALJ Wang's determination that Plaintiff's "gait is unimpaired, there is no weakness of the lower extremities, and no limitation of motion" was not supported by the evidence, including Plaintiff's treatment records. (*See* R. 1305–06). Additionally, the Council noted that ALJ Wang's determination mentioned certain relevant

2

examination findings from Dr. Sayegh but failed to discuss them. (*Id.*). Accordingly, because the record lacked up-to-date medical records about the hip impairment,[2] the Council directed ALJ Wang to "consider obtaining a medical consultative examination" "[i]f more recent medical evidence is not available on remand." (R. 1306).

ALJ Wang then held a telephone conference on July 23, 2020, before issuing another unfavorable determination on November 19, 2020, in which he concluded that Plaintiff "has the residual functional capacity to perform sedentary work" with some limitations.[3] (R. 1175). In so concluding, ALJ Wang acknowledged the Appeals Council directive, writing that he was told to "obtain a consultative examination (as needed) to evaluate the severity, onset, and limiting effects, of the claimant's hip impairment." (R. 1169). But he did not order a consultative examination prior to issuing the determination, even though it does not appear that more recent medical evidence was added to the record. Instead, he explained that he had decided a consultative examination was not necessary based on the telephone conference with Plaintiff's representative and because the evidence in the record was sufficient for him to arrive at a disability determination; in particular, he highlighted evidence that demonstrated "the claimant is more active than he has testified to" and that he was "noted to be in no acute distress" even when claiming that he was suffering from pain that he estimated as an 8 out of 10—thus undermining Plaintiff's assertion that his hip issues are debilitating. (R. 1177–78). Additionally, in formulating the RFC assessment, ALJ Wang gave partial weight to the medical opinions of Dr. Jeffrey Haggenjos, who treated Plaintiff, though he did not mention one particular opinion about

---

[2] Specifically, the Appeals Council decision stated: "the record contain[ed] minimal treatment records related to the claimant's left hip impairment, and the most recent information available related to this impairment is dated 2015, over 3 years before the date of the decision." (R. 1306).
[3] Residual functional capacity is a determination of the maximum amount of work that an SSI claimant can do, given their physical and mental limitations.

3

Plaintiff's reaching, handling, fingering, feeling, and pushing limitations (hereinafter, "the reaching/handling opinion"). (*See* R. 1180). Plaintiff once again sought review of the unfavorable determination, but was denied by the Council, thus rendering ALJ Wang's determination a final decision of the Commissioner of SSA.

Plaintiff filed suit in this Court on March 9, 2022, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). He filed his Statement of Errors on August 5, 2022, in which he requested that the Court vacate ALJ Wang's determination and remand his claim for a new decision. Plaintiff argued that remand is appropriate for two main reasons: first, because ALJ Wang failed to obtain a consultative medical examination as allegedly required by the September 27, 2019, directive of the Appeals Council; and second, because ALJ Wang failed to explain why he did not afford controlling weight to the reaching/handling medical opinion of Plaintiff's treating physician, Dr. Haggenjos, in the RFC assessment. (*See* Statement of Errors 14–20, ECF No. 13).

On October 21, 2022, Magistrate Judge Vascura issued a Report and Recommendation, in which she recommended that this Court affirm the Commissioner's decision and overrule Plaintiff's Statement of Errors. The Magistrate Judge recommended finding that neither ALJ Wang's failure to obtain a consultative examination nor his failure to incorporate the reaching/handling opinion in determining Plaintiff's RFC constituted reversible error. (*See* R. & R. at 9, 17, ECF No. 16). Plaintiff filed a timely objection, which is now ripe.

## II. STANDARD OF REVIEW

If a party objects within 14 days to the Magistrate Judge's proposed findings and recommendations, the district court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28

U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). The district court may "accept, reject or modify the recommended disposition; receive further evidence; or return the matter to the magistrate with instructions." Fed. R. Civ. P. 72(b). On the other hand, if a party fails to object timely to the magistrate's recommendation, that party waives the right to *de novo* review by the district court of the report and recommendation. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). A party's objection should be specific, identify the issues of contention, and "be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). When a pleader fails to raise specific issues, the district court will consider this to be "a general objection to the entirety of the magistrate report, [which] has the same effects as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

In reviewing the decisions of the Commissioner of Social Security, federal courts are "limited to determining whether the Commissioner's decisions 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). Substantial evidence constitutes such relevant evidence, looking to the record as a whole, as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Ellis v. Schweicker*, 739 F.2d 245, 248 (6th Cir. 1984). The findings of the Commissioner are not subject to reversal "merely because there exists in the record substantial evidence to support a different conclusion," *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001), or if the Court itself would have arrived at a different conclusion, but must be affirmed as long as the Commissioner's decision is supported by substantial evidence. *See Elkins v. Sec'y of Health & Hum. Servs.*, 658 F.2d 437, 439 (6th Cir.

5

1981). Additionally, "an ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (internal quotation marks and citation omitted).

### III. LAW & ANALYSIS

There are two arguments at the heart of Plaintiff's claim. First, Plaintiff alleges that ALJ Wang's failure to obtain a consultative medical examination was in violation of a mandatory directive from the Appeals Council's remand order. Second, Plaintiff argues that ALJ Wang failed to explain sufficiently why he did not afford controlling weight to the medical opinion of Plaintiff's treating physician, Dr. Haggenjos, about Plaintiff's "reaching, handling, fingering, feeling, and pushing/pulling" capacity.[4] The Court addresses each claim in turn.

#### A. Failure to Obtain Consultative Examination

On November 19, 2020, ALJ Wang issued a revised decision regarding Plaintiff's SSI application based on directives from the Appeals Council, which had remanded the case to him on September 27, 2019. At the heart of the Council's remand order was a concern that ALJ Wang's first decision had failed to consider properly Plaintiff's hip problems, by ignoring certain medical findings, arriving at conclusions unsupported by the evidence, and relying on outdated records. Thus, the Council wrote: "[i]f more recent medical evidence is not available on remand when the record is updated, then the Administrative Law Judge should consider obtaining a medical consultative examination to ensure the claimant's condition is adequately evaluated through the date of decision." (R. 1306; *see also* R. 1307 (ordering the ALJ to "obtain a

---

[4] In the Report and Recommendation, the Magistrate Judge noted that ALJ Wang gave other medical opinions of Dr. Haggenjos "partial weight," *see infra* Part III.B, but that that decision was explained sufficiently in the determination. (R. & R. at 15, ECF No. 16). Plaintiff does not dispute that part of the determination, or object to the Magistrate Judge's conclusion in that respect.

6

consultative examination (as needed) to evaluate the severity, onset, and limiting effects of the claimant's hip impairment")). Even though no new evidence was added to the record on remand, ALJ Wang did not obtain a medical consultative examination before issuing an unfavorable decision. Plaintiff asserts that this failure was unlawful, because ALJs must follow directives from the Appeals Council on remand. *See* 20 C.F.R. § 404.977(b) (noting that an ALJ "shall take any action that is ordered by the Appeals Council").

In the Report and Recommendation, the Magistrate Judge suggested that this Court lacks jurisdiction to assess whether ALJ Wang's decision not to obtain a consultative examination failed to comply with the Appeals Council directive. She noted that federal courts have the authority to review only a "final decision" of the Commissioner, *see* 42 U.S.C. § 405(g), but that an alleged failure to comply with a directive should be construed as an "internal agency matter which arises prior to the issuance of the agency's final decision." (R. & R. at 7, ECF No. 16) (quoting *Amber R. v. Comm'r of Soc. Sec.*, No. 3:21-cv-00204, 2022 WL 3966676, at *2 (S.D. Ohio Aug. 31, 2022)). The Magistrate Judge further noted that a majority of district courts in this Circuit have held that the failure to comply with an Appeals Council directive is outside the jurisdiction of federal courts. (*See id.* at 6–7) (collecting cases). This position is rooted in the fact that an ALJ's unfavorable determination only becomes final after the claimant requests (and is denied) review by the Appeals Council. According to this theory, that decision to deny review is an implicit ratification of the ALJ determination as consistent with the previous remand directive; but the denial itself is only an intermediate agency decision,[5] thus precluding judicial review of the denial itself. *See Shope v. Comm'r of Soc. Sec.*, No. 2:14-cv-02055, 2015 WL

---

[5] When the Appeals Council declines review of an ALJ determination, the underlying determination "becomes" the "final decision" for purposes of judicial review.

7

3823165, at *9 (S.D. Ohio June 19, 2015), *report and recommendation adopted*, 2015 WL 6155919 (S.D. Ohio Oct. 20, 2015).

In his Objection, Plaintiff notes that some district courts in this Circuit have held otherwise, concluding instead that "the failure by an ALJ to follow a remand order from the Appeals Council, even if that failure is allowed to stand by a later Appeals Council ruling, can constitute a reversible error in federal court." *Kaddo v. Comm'r of Soc. Sec.*, 238 F. Supp. 3d 939, 944 (E.D. Mich. 2017). Although the Sixth Circuit has not addressed this debate explicitly, it has implicitly ratified the *Kaddo* position based on the regulatory language mandating Appeals Council remand orders be followed in subsequent proceedings. *See Wilson v. Comm'r of Soc. Sec.*, 783 F. App'x 489, 497 (6th Cir. 2019). After all, federal courts have a statutory obligation under § 405(g) to review the final decisions of the Commissioner—in this case, the unfavorable determination issued by ALJ Wang. And the standard of review requires courts to assess whether that final decision is in compliance with the applicable legal requirements, statutes, and regulations. *See Cole*, 661 F.3d at 937. When the Appeals Council issues a remand order with specific directives, the directives become requirements that the ALJ legally must follow under 20 C.F.R. § 404.977(b). *See Noreja v. Comm'r of Soc. Sec.*, 952 F.3d 1172, 1180 (10th Cir. 2020) (noting that "for jurisdictional purposes, there is little difference between reviewing an ALJ's decision for compliance with a remand order under 20 C.F.R. §§ 404.977(b) and 416.1477(b) and reviewing an ALJ's decision for compliance with other regulations relating to gathering and evaluating evidence"); *see also Mefford v. Gardner*, 383 F.2d 748, 758 (6th Cir. 1967) (noting that, "if the cause is remanded with specific directions . . . any proceedings inconsistent therewith is error").

The fact that ALJs must comply both with remand orders and with regulations illuminates the flaw in the position that courts lack jurisdiction to review an ALJ's alleged non-compliance with remand orders. As mentioned, that position presumes that the denial of review by the Council is an implicit decision that the ALJ determination complied with the prior remand order (and that that implicit decision is an unreviewable intermediate decision). *See Shope*, 2015 WL 3823165, at *8; *see also Brown v. Comm'r of Soc. Sec.*, No. 1:08-cv-00183, 2009 WL 465708, at *6 (W.D. Mich. Feb. 24, 2009) ("By failing to remand the matter a second time, it appears that the Appeals Council considered the ALJ's [] review to be in compliance with the Council's previous order of remand."). If that is the case, then the denial of review should also be construed as an implicit decision that the ALJ determination complied with all applicable statutes and regulations.

There is no suggestion, however, that federal courts are precluded from reviewing an ALJ's determination for compliance with statutes or regulations; that is the essence of judicial review under § 405(g). *See Noreja*, 952 F.2d at 1180 (noting that federal courts "issue reversal orders all the time based at least in part on an ALJ's failure to comply with" "regulations relating to gathering and evaluating evidence" (collecting cases)). But it would be inconsistent to construe the decision to deny review by the Council as an "intermediate decision" precluding judicial oversight only with respect to internal directives and not with respect to SSA regulations, where the internal directive set forth legally-mandatory requirements just as regulations do. *See id.* At its core, judicial review in both cases asks whether the ALJ determination is in "conformity with such regulations" (whatever their source) and does not scrutinize the Appeals Council denying review. 42 U.S.C. § 405(g); *see also Ellis v. Colvin*, 29 F. Supp. 3d 288, 299 (W.D. N.Y. 2014). The Court concludes, therefore, that judicial authority to review final

9

decisions of the Commissioner must include the jurisdiction to evaluate whether an ALJ has complied with a remand directive from the Appeals Council.

Having established the Court's jurisdiction to review Plaintiff's failure-to-comply claim, the Court next considers the merits of the claim. The Magistrate Judge concluded that ALJ Wang had a substantial basis for deciding not to obtain a consultative examination, due in part to the discretion afforded to ALJs by regulation and by the specific Appeals Council directive in the case *sub judice*. (*See* R. & R. at 9, ECF No. 16). Additionally, the Magistrate Judge noted that ALJ Wang provided extensive explanation for how the evidence available to him in the record supported his conclusions about Plaintiff's hip impairment, even without an additional consultative examination, and that that evidence was sufficient to make a well-reasoned determination. (*Id.* at 10) (citing R. 1177–78).

Plaintiff's objections are unavailing. He does not argue that the Appeals Council directive left no discretion, but does suggest that ALJ Wang did not retain discretion to skip a consultative examination under 20 C.F.R. § 416.919a(b), which sets out situations where SSA "may require" a consultative examination. (*See* Obj. at 5, ECF No. 17). But Plaintiff has not shown that the "may" language in the regulation eliminates all discretion, nor that his is a case where "the evidence as a whole is insufficient to support a determination or decision." 20 C.F.R. § 416.919a(b). Plaintiff relies on the fact that ALJ Wang initially indicated that he would obtain a consultative examination, but falls short of explaining how the ultimate decision not to do so was bereft of sufficient evidence, especially since ALJ Wang provided plenty of evidence in support of his decision (noting, for example, that Plaintiff had regularly performed daily activities belying a debilitating hip injury and had been evaluated as not suffering from acute distress). *See* AR 1177–78. Plaintiff argues that the reliance on daily living activities was not

10

based on substantial evidence and, even if supported by evidence, does not bear on his ability to carry out the activities associated with a typical 40-hour work week. (Obj. at 5, ECF No. 17). In fact, ALJ Wang relied upon evidence in the record, which Plaintiff does not dispute, that Plaintiff was doing more than just watching television, paying bills, or attending college classes, *see Kaddo*, 238 F. Supp. 3d at 945, but also climbing ladders, removing aluminum siding, driving a bulldozer, and leveling a mobile home—activities that do provide some indication of an individual's ability to maintain a 40-hour work week.

As Plaintiff has not shown that ALJ Wang lacked discretion or substantial for his decision to forgo obtaining a consultative examination, the Court concludes that Plaintiff's first contention of error is without merit.

### B. Medical Opinions of Dr. Haggenjos

Plaintiff's second contention is that ALJ Wang failed to explain in sufficient detail why he did not give the medical opinions of Dr. Haggenjos controlling weight in formulating the RFC assessment. Specifically, the contention centers on the ALJ's omission of Dr. Haggenjos' reaching/handling opinion in explaining the RFC decision. (*See* Statement of Errors at 19, ECF No. 13). The opinion consists of five questions within a larger checkbox form; the questions ask how often the individual can perform five physical functions—"reaching, handling, fingering, feeling, pushing/pulling"—with corresponding blanks in which Dr. Haggenjos wrote that Plaintiff could "rarely" perform the first four functions and could "almost never" push/pull.[6] AR 1151. While ALJ Wang mentioned other portions of the checkbox form in formulating the RFC, he made no mention of the reaching/handling opinion. (*See* AR 1180–81).

---

[6] The form listed four possible answers that Dr. Haggenjos could choose: constantly, frequently, occasionally, or never. AR 1151. Dr. Haggenjos' handwriting is difficult to read for his first four responses. *See id.* The Magistrate Judge concluded that he wrote "rarely," and Plaintiff does not dispute this reading. (*See* R. & R. at 16, ECF No. 16; *see generally* Obj., ECF No. 20).

An ALJ must consider all medical opinions in the record in evaluating a disability claim, *see* 20 C.F.R. § 416.927(c), with the source of a medical opinion dictating "the process by which the Commissioner accords it weight." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). For a medical source who regularly treats the claimant, otherwise known as a "treating physician" or "treating source," an ALJ must analyze the treating physician's opinion according to a two-step analysis. *See Allums v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 823, 832 (N.D. Ohio 2013). First, the ALJ must consider what weight to give the opinion of a treating physician, with a presumption that it should be afforded controlling weight so long as the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record . . . ." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009) (alteration in original) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Second, if an ALJ chooses not to give the opinion of a treating physician controlling weight, the ALJ must analyze a variety of factors in order to determine how much weight to give the opinion instead. These factors include "length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. §§ 404.1527(c)(2)–(6).

If the ALJ chooses not to give a treating physician's opinion controlling weight, the ALJ is required to give "good reasons" for that decision. 20 C.F.R. § 404.1527(d)(2). "Good reasons" are reasons that are "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Blakley v. Comm'r of Soc.*

12

*Sec.*, 581 F.3d 399, 406–07 (6th Cir. 2009) (citation omitted). This applies with extra force to cases where the ALJ has set aside a treating physician's opinion that the claimant is disabled. *See id.* at 407 ("The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." (quoting *Wilson*, 378 F.3d at 544 (internal quotation marks and citation omitted))).

Although ALJs are required to adhere to the procedural requirements of § 1527(d)(2), there are three types of violations that can constitute harmless error and thus negate the need for reversal. *See Wilson,* 378 F.3d at 547. One category, as relevant to this case, is where the "treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." *Id.* The Magistrate Judge concluded that this—the so-called "patently deficient" exception—applied to the handling/reaching opinion, thus excusing ALJ Wang's failure to provide good reasons for excluding the opinion in formulating the RFC. (R. & R. at 16, ECF No. 16). In reaching this conclusion, the Magistrate Judge noted that the Sixth Circuit has repeatedly found check-box opinions that lack explanation, like Dr. Haggenjos' handling/reaching opinion, to be patently deficient. (*See id.* at 17) (citing *Pruitt v. Comm'r of Soc. Sec.*, No. 22-5152, 2022 WL 4517094, at *4 (6th Cir. Sept. 28, 2022)); *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474–75 (6th Cir. 2016).

Plaintiff objects to this conclusion, on the basis that the opinion is not deficient because Dr. Haggenjos noted on the form that the findings are supported by "x-ray." (Obj. at 6, ECF No. 17) (citing AR 1151). The cursory mention of "x-ray," without any further explanation, apparently refers to an x-ray imaging performed the day before, which showed signs of hip

13

dysplasia.  (*See id.*).  Plaintiff argues that this removes the opinion from the realm of the "patently deficient" exception, and thus that ALJ Wang was required to explain his failure to consider it in the RFC.  Plaintiff does not, however, explain how an x-ray of his hip provides any support for the handling/reaching opinion; after all, hip dysplasia typically limits an individual's ability to walk and range of motion in the pelvis (and may cause pain in the groin area), *see What is Hip Dysplasia?*, Penn Med., https://www.pennmedicine.org/for-patients-and-visitors/patient-information/conditions-treated-a-to-z/hip-dysplasia, rather than her upper body capacities, like her ability to push, pull, or reach.

As the checkbox form lacks support or explanation, the Court concludes that Dr. Haggenjos' handling/reaching opinion was patently deficient.  Accordingly, ALJ Wang's failure to explain why he did not give the opinion controlling weight (or any weight) was harmless error.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Objection (ECF No. 17) is hereby **OVERRULED**.  The Court **ADOPTS WITH MODIFICATIONS** the Magistrate Judge's Report and Recommendation (ECF No. 16) and **AFFIRMS** the Commissioner's non-disability determination.  This case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: March 27, 2023**